Good morning. May I reserve one minute for rebuttal? Yes, and how are conditions in Maine? Well, I got power back after about a week recently and cable is still out and other people are without power, but we're getting there. I heard yesterday 10% of Maine still didn't have power? It's still pretty severe in some places. A surprisingly severe storm. Proceed. Thank you, Your Honor. May it please the Court, I'm Robert Keech, Counsel to Appellant Development Specialists Inc, also known as DSI. DSI is the trustee of the Irving Prime Creditors Trust, a trust formed under the confirmed plan of liquidation for several individual debtors, including Prime Maine, Prime Missouri, Irving Tanning Company, and Cudahy. That trust was formed, among other things, to pursue causes of action for the benefit of creditors, including employees whose vested benefits remain unpaid. Importantly, under the plan, individual creditors assigned their causes of action to the trust for pursuit and to the trustee, including any causes of action individual creditors may have had under the Maine UFTA. This Chapter 11 was precipitated by the attempted acquisition or combination, if you will, by one very distressed company, Irving Tanning Company and its subsidiaries, of another very distressed, badly distressed corporate group, Prime Maine, Prime Missouri, Cudahy, and the new co that was formed to acquire the stock, Prime Delaware, using a sort of classic leverage buyout. Counsel? Sure. I know you keep calling it an LBO. Nobody else calls it an LBO. Can we just deal with the issues in the case without characterizing it, please? Sure, I'd be happy to. I want to move you along. Sure, no, I'd be happy to. Constructive fraud. Could you please address that, which I believe is your strongest of your fraud claims? Sure. Your Honor, problematically, of course, as we've said in the brief, the bankruptcy court did not make any specific findings with respect to transfers made to the benefit of the operating subsidiaries whose assets were used to create the leverage and create the money and to create the payments to the shareholders. There appear to be three responses to that. One is you led the bankruptcy court down this garden path by how you chose to brief the issues before it, not inviting it to make separate findings as to the subsidiaries. Number two, that you didn't ask for any Rule 52A findings in any event. And number three, as the district court noted, it's highly unlikely that the parent company could have been solvent if its two subsidiaries were not solvent, and therefore this doesn't really amount to much. So address that and then go on. Sure. I think that mixes two issues, both whether or not those subsidiaries received any value, much less for equivalent value and solvency. So let me address them both. First, the operating subsidiaries here received no transfers of any value whatsoever in exchange for leveraging their assets and paying money to the shareholders. They received no consideration whatsoever directly. That fact is actually conceded by the appellees here, and no court has argued that they received any transfers of any value. The district court, in fact, specifically found they received no transfers of value. And let's put aside the reasonably equivalent value. There are still two other conditions that we have to consider. Could you address those? Sure. Let me first address solvency. The bankruptcy court focused almost exclusively on balance sheet solvency of one entity, the parent corporation. First, it got there by looking at a balance sheet that was entirely inadmissible, was admitted over our objection, and was not admissible on any basis. It's pure hearsay. The defendants could not identify the author of the balance sheet or who created it. More importantly, it was clear that the author of the balance sheet was not present in court, and it was not admitted through that party, thus depriving anybody, us and the court, of deconstructing that balance sheet, which is the normal course of action in an LBO litigation. I've suggested once that you drop the term LBO. Sure. Do I have to make the suggestion again? Certainly not, Your Honor, although Mr. Goldberg has admitted that it was such a transaction, but I don't think that's relevant. Counsel, move on. Thank you, Your Honor. So we don't think that the court's reliance on the balance sheet was appropriate, and they had no other evidence, frankly, of solvency. If you look at what is uncontested evidence with respect to not any witness we presented, but the witnesses actually presented by the defendants, the insolvency of the operating companies is unmistakable. In fact, it is the only conclusion you can reach. Mr. Arden testified, this is the record at 1703 and 04, Mr. Arden was the turnaround consultant hired by the Tudors pre-LBO. Excuse me, Your Honor. I'm battling a bit of a cold, and I apologize for my voice in advance. So am I, Counsel. Mr. Arden actually, in the report by Phoenix, indicated that the operating debtors, in this case, Prime, Maine, and Cudahy, were not paying their debts as they came due prior to the LBO. Well, that's not entirely fair, is it? They didn't pay at the day of the closing. They postponed some, but they weren't paying their debts. And, by the way, you seem to overlook the fact that they turned down a very significant cash offer for the business, because they obviously thought that there was more value in what they were selling than what the cash offer was. Well, actually, Your Honor, I'm actually talking about a period pre-closing. We'll get to the closing issue, but pre-closing, the Phoenix report, which was issued to the Board, indicates that those companies are not paying their debts as they come due, that they're stretching all of their payables, in some cases, beyond 90 days. Can you back up one second, just so I understand where we're located here? From your perspective, is there a finding by the Bankruptcy Court on any of the factors that relate to constructive fraud? Unfortunately, Your Honor, no. The Bankruptcy Court made no findings related to constructive fraud. No, it made findings that might be leveraged for that purpose, but as I understand it, the findings are all actual fraud findings that we'd then be relying on, right? Yeah, the Bankruptcy Court focused entirely on, and as the District Court found it appropriately, the Bankruptcy Court focused entirely on whether or not the shareholder's stock was worth what they got for it. Fraudulent conveyance analysis, whether inside this kind of transaction or otherwise, requires that you look at what the individual debtors each got. It made findings on actual fraud that then the District Court tried to leverage for purposes of the constructive fraud factors. Right, correct. The Bankruptcy Court didn't make those. So what's wrong with what the District Court did in that regard? In other words, I guess I'm asking sort of a prior question to the question of whether the finding is correct, and I'm really asking whether there's a finding at all on these matters of whether we have to remand to the Bankruptcy Court. Yeah, I think there's no finding at all. The District Court reached out to find no direct transfer to any of the operating companies. The District Court then reached out to a footnote that the Bankruptcy Court had written in its opinion to talk about so-called synergies. The problem with, and said, well, the Bankruptcy Court must have found that these synergies created fair equivalent value to the operating subsidiaries, and that was the basis for its outcome. So on that one, I guess my issue is, I mean, it seems to me that a fair reading of the record, the Bankruptcy Court didn't find that the synergy was of a type that would create a reasonably equivalent value, because it had no occasion to make that finding. But I guess I don't really understand, and at some step I think what the District Court did. Once you find synergy, I mean, is the idea supposed to go back and determine how synergistic was it? Is that the idea? Yeah, actually, in the First Circuit under Roanoke and under the progeny cited in Roanoke, in fact, if you're going to use an indirect transfer, in the absence of a direct transfer, the burden of bringing forth evidence shifts to the defendant to prove that there are concrete and quantifiable indirect benefits, and to quantify those benefits so that they can be calculated to be fair equivalent value. Okay, if you're right about that, and I'm not sure, but if you were, and we had to read men on that, we only have to do it if there wasn't a sufficient finding on one of these other two factors with respect to, in particular, intended to incur, believe, the reason we should have believed that it would incur debts beyond its ability to pay. With respect to that finding, the District Court's relying on what in the Bankruptcy Court's decision? Again, there were no findings whatsoever on this. It purports to be relying on a finding in the Bankruptcy Court's decision, so isn't there another footnote in the Bankruptcy Court's decision that it's relying on? Right, there's a footnote in which the Bankruptcy Court, again, having found that it doesn't need to reach the issue, I would say muses about certain of the evidence, and as we pointed out in our brief, every one of those statements in that footnote, to the extent that they are findings of fact first, the footnote constitutes findings of fact about Prime Delaware, not any of the operating companies. So you have to assume not only that those weren't findings about the company that the Bankruptcy Court's actually talking about, but other companies, and again, when you're talking about cash flow and not paying debts as they come due, you could have a solvent parent, because it doesn't have any obligations, and very insolvent subsidiaries, which is exactly what you had here. The Court found, for example, that the debtors were paying their debts as they came due through mid-2008. That finding, if it were a finding about not just Prime Delaware, but Prime Missouri and Prime Maine and Cudahy, would be clearly erroneous and completely devoid of support in the record. And if we back up one and we go to the business transaction, which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, what's your understanding of what the District Court's relying on the Bankruptcy Court's decision for that finding? Is there one from the District Court? No, there isn't. The District Court just bypasses that because it went to the last one. Yeah, exactly. Okay. And, Your Honor, since... So your position is, maybe you want more than this, but your position is the way the Bankruptcy Court decided this, put the District Court in a position where it went on a hunt for a finding, and you say there's actually not a finding either about receiving equivalent value, because you'd have to do a more detailed look than just finding a synergy. Correct. And as to the last one, there's no finding because that footnote doesn't account for the fact that you might have had Prime Maine in a worse situation than the other companies. Correct, Prime Maine and Prime Missouri. In fact, the CEO of those companies, Mr. Moore, and this is at 2763, and again at 1928 and 1987, admitted those companies were not paying their debts as they came due in the first quarter after the closing. So the idea that they were paying their debts as they came due into mid-2008 is simply divorced from any reality in the record. How much of this argument did you make below? We made all of these arguments below, and we at no point suggested that the Court should consider these consolidated entities. Each of these, in fact, that would have been raised judicata in any event. This confirmed plan treats each of these debtors as separate entities. There is no way we could have asked that they be combined. The Bankruptcy Plan had already determined they were not. I think what we have here, Your Honor, is a situation where the District Court, I think, flatly acknowledged that the Bankruptcy Court had not made critical findings on either fair equivalent value or solvency. It then went searching for both. It tried to find fair equivalent value in the synergies argument, but the synergies don't state a value. There is nothing concrete or quantifiable about them. The Bankruptcy Court referred to in a footnote to the Mellon and RML decisions out of the Third Circuit, and frankly misread them both. The quote from the Bankruptcy Court in the footnote is a quote that says that certain projected synergies can constitute value. The opinion of RML then goes on to say, but you still have to test to see if it's fair equivalent value, and in fact in RML the Court found that they were not fair equivalent value. That case actually stands for the opposite proposition the Bankruptcy Court cited. Can I move you to the fiduciary issue? Sure. Because I think if I understand your argument there, you have a similar version of the argument in the sense that with respect to the ratification question, the Bankruptcy Court made no finding as to ratification. Is that right? It did not. But the District Court found that the record nonetheless can be read to provide evidence of ratification, and it has a footnote saying maybe the First Circuit will disagree, but he finds that there's ratification. Your challenge to that finding is that there's nothing in the record to support it because nothing talks about the loan? Is that the idea? Well, there are two arguments there, Your Honor. First, the Bankruptcy Court said there's no fiduciary breach because there's no fraudulent conveyance. The District Court said that's wrong as a matter of law. In fact, it was admitted that the Board of Directors here completely abdicated due diligence to a third party. They admitted that. The District Court then tried to find a way around the breach of fiduciary duty problem by looking for shareholder ratification. The District Court was wrong for two reasons. One is there was never a shareholder vote on anything other than the contribution agreement, which had no mention of the manner in which this acquisition was going to be financed. Secondly, there were no disinterested shareholders, and under both Maine law and Delaware law, that may apply here. Did that last point, was that made either in your opening brief or below? Because I know you mentioned the conflict of interest, but it's only in reply that I see you citing the Maine law that says a qualified share has to be held by a disinterested person. Well, the ratification argument was not raised by anybody until the District Court raised it in its opinion below, Your Honor, which is why we addressed it in the reply. So you seem to raise it in the reply that a qualified share can't be held by anybody other than a disinterested shareholder. That I didn't see in your opening brief. Am I missing something? No, I think we raised in the opening brief both the contribution agreement argument and the conflicts issue, and then we elaborated on the conflicts issue in the reply. Okay, but just so we're straight with each other, when you say that you elaborated on the conflicts issue, that's the— Yeah, we did not make the qualified share argument. We did not bring that into play until they raised in their reply that they thought there was a response to the conflict. Thank you. Thank you, Mr. Keech. May it please the Court, Lawrence Green, joined by Tal Ahmad and Laura Middleman representing Amber Lees. The trial court properly dismissed all counts of this complaint because there had been a complete failure on the part of DSI to sustain its burden of proof. Look, there is a significant problem in the case about the focus of the bankruptcy court ruling not on the two subsidiary individual debtor companies and the district court's efforts to save the case nonetheless. So could we please just get to the heart of this? Yes, Your Honor. I'd be glad to get right to that. This case was never pleaded that way. It was never tried that way. Complaint paragraph 124, the value of the consideration received by the debtors, plural collectively, was not reasonably equivalent to the cash transfers. Repeated several times throughout the pleading. Complaint 134, at the time the cash transfers were made, the debtors were engaged in a business or transaction or about to be engaged in a business or transaction for which any assets or property remained with the debtors after the cash transfers was unreasonably small. Again, repeated several times. Okay. Are you saying that this constant reference without distinguishing among the debtors to debtors somehow has waived the argument or invited the bankruptcy court to analyze it the way it did? I'm saying, Your Honor, that when a case is pleaded that way and when a case is tried that way, that's how a bankruptcy court should decide the case. I could go on to complaint paragraph 92, and this is critical. Just as the debtors were consolidating operations in Heartland, Maine in 2008, the debtors' chemical and energy costs increased. They're talking about consolidated entities. My brother took liberties. If I could just make one other point in response to Judge Lynch. My brother made reference to Wells Fargo 2995, 2595 as part of his briefing here. In that document, this is Wells Fargo. This is October 15, 2008, reporting as of August 31, 2008. This is nine months after the transaction. They're saying with the consolidation of Irving, Tanning, Prime, Tanning, Cudahy, the company, the company, they're referring to the company collectively here. It goes on and on. The company is, and responding to a few of my— Can I just add something? Yes, you are. Certainly. Okay, so are you defending the district court's decision, or are you defending my district court decision? Your Honor, we went either of two ways here. Okay, so let's stick with the district court decision. That's fine. Okay, how do you defend the district court decision with respect to the findings that I just went through with your opponents? I'm trying to do that in response to Judge Lynch's question. I'm saying— Can I just— I'm sorry. I guess what I'm—I take the point, okay? But I'm just saying we have a district court that said the bankruptcy court missed some points. But it's not a problem because findings it didn't make as findings about those things are manifest in the record. So I'll now just say those findings that it did make, even though it didn't realize it was making them about these features of constructive fraud, are perfectly serviceable for affirming under constructive fraud, and it identified two. It says there was a synergy that was a reasonably equivalent value, and it said there was evidence that they'd be able to pay their debts. And before you say by that I'm wrong to be asked that question, I just want to know how are those findings by the district court permissible given the gap between what the bankruptcy court actually found and what it looks like under the constructive fraud test has to be found to be a sufficient finding. Those two findings were confirming findings that were made by the bankruptcy court. How? Because the bankruptcy court did not find reasonably equivalent value through the synergy. It had no occasion to. The bankruptcy court found that there were multiple synergies. Yes, I agree with you. The question is, did it find that the synergies constituted reasonably equivalent value? It did after it in fact found that there were synergies here. Yes. And it was an alternative finding after finding, Your Honor, that more than reasonably equivalent value had come in. But there's one other thing that the district court did here, which basically was completely responsive to this. The district court found, in addition to the two points that you made, that when you have here corporations, a parent, a grandparent, that are all operating as one entity, that ineluctably you can look at that and say that everybody got more than equivalent value. You don't have to go back at this because they are all operating as one entity. And that's the point I'm trying to make here. That's how this case was pleaded. That's how this case was tried. There was never any attempt to suggest that these entities were operating separately. Moreover, if there were an issue on this, my brother had every right under Rule 52 to say, we need more specific findings. Rule 52 is very clear. We are not here arguing that he has waived his appeal under Rule 52. What we are arguing is that he has waived his right. Excuse me, Your Honor. So here's the thing, Andrew. Rule 52 just seems, I have trouble conceptually fitting it to this particular circumstance because it's not as if they're asking for a more detailed finding about reasonably equivalent value. They're complaining that there was no finding on reasonably equivalent value at all. And in fact, there was not because the way the bankruptcy court decided the case, it had no occasion to make one. Respectfully, Your Honor, I disagree. The court was very clear here that their one witness who came on the stand, Grover Elliott, their CFO, now Chief Recovery Officer, who had the audacity to come on the stand and say nothing came in of any value, where they had the burden of proof, the district court said this is refuted in a number of different ways. They looked not only at Exhibit 40. The district court can't make a finding, Kevin. The district court did, in fact, make findings. But it can't. I'm sorry, the bankruptcy court. If I misspoke, Your Honor, my apologies. The bankruptcy court made very clear findings that the district court referred to when they said more than reasonably equivalent value came in. They were not looking only at Exhibit 40, which, by the way, Grover Elliott confirmed. Did the bankruptcy court use those words, more than reasonably equivalent value came in? What they said here, Your Honor, was yes. Yes. They said that what came in was $45 million came into this entity. We know that what went out, let's be clear on this, what went out was originally it was $14.6 million in cash transfers, but it was stipulated by the parties that $4 million of that was for a covenant not to compete, which Mr. Cahill said, of course, when we buy a company, we want a covenant not to compete. That only made sense. So we're down to $10.6 million. The $9 million in life insurance gets added in post-trial after the fact. That's $19 million going out. How can you look at it otherwise here when we have exhibit after exhibit? Not only Exhibit 40, which, by the way, Grover Elliott confirmed was prepared either by one of his people or the Grant Thornton people who looked at this transaction. We also have, and this is critical here, the day after tax return, which we cite to, where it's a consolidated tax return. By the way, the tax returns are all consolidated. The financials are all consolidated. And in the tax return here, we're talking about, and the trial court, the bankruptcy court made direct reference to this. The tax return, this was Defendant's Exhibit 17. Mr. Elliott confirmed the accuracy of the figure. The figure was $46.2 million of retained earnings of new prime opening up as of November 21. The district court cited specifically to that long before it even got to synergies here. The district court? Excuse me, the bankruptcy court. Excuse me, Your Honor. So it was exhibit after exhibit that was pointed to that didn't even make it a close call here, especially when their whole case was you got nothing out of this here. Having failed to provide any attempt in their pleadings or a trial to say priming got less, when we have clearly millions and millions of dollars over and above what the Kaplan's got out of this, when we did have, in fact, the synergies, and the synergies do mean something. What about that, the finding about the paying the debts? The district court found that they were paying their debts well into 2008. The district court found that the bankruptcy court found that. Excuse me, the bankruptcy court found that. Excuse me, Your Honor. And I'll further point to that. So which way do you make of your opponent's contention that the bankruptcy court made no finding with respect to Prime Main? They were talking collectively, Your Honor. They were talking about the company because that's how the company operated. And, again, I call the court's attention. This is at 3447 to 3449. This is an exhibit they cited to for a quote from Rick Cobb, a quote that they didn't even call the court's attention to in the bankruptcy proceedings below. I just want to call the court's attention. Again, this is a report prepared December 15, 2008, as of August 31, 2008. The company is current with all payments thus far. It's talking about the payments to Wells. It's further saying here, and this is, again, nine months after the transaction. This is at 3449. All of the company's top suppliers but one are working with the company. Again, company collectively and shipping timely. The company is referred to collectively in a number of different ways there throughout. There is no suggestion whatsoever here that Prime Main, as opposed to the company generally, was doing something here. The case, again, wasn't tried that way. And, again, nothing under Rule 52 there. One other thing I want to call to the courts. It may be you have the same answer when we move to the fiduciary question, but let's just go through it and see whether you have the same answer. With respect to the fiduciary question, we have the same issue, which is we have no finding by the Bankruptcy Court directly purporting to be a finding on the key issue with respect to ratification. Yes, you are. Before we get to ratification, we have an explicit finding on solvency. And we have briefed this matter. The briefing is unabundant here. That where you have a solvent corporation, there is absolutely no duty that is owed by directors to creditors. There is no duty whatsoever. It's very clear under Main Law. We cite to the Tiernan v. Baresi case in our brief. It was also a case that Judge Hornby cited to in affirming the Bankruptcy Court here. Where a corporation is solvent, no duty is owed by directors to creditors. Okay. Just indulge me because I thought the District Court thought it was necessary to reach the ratification issue. Correct? The District Court, yes, addressed that, Your Honor. And on ratification, I would say that. It doesn't matter. So with respect to ratification, there was a finding. But the District Court concludes that there was ratification by the shareholders. And it references the ratification of the contribution agreement, I guess. Is that the right thing? I think that's correct, Your Honor. So if you don't understand the briefing from your opponent, they say that's fine. They don't deny that. But there's no indication of a ratification with respect to the mechanism for a consolidated deal, which would be to take on the debt. Your Honor, they may not. And I didn't see you address that point that they make in your briefing, so could you address it now? Yes, Your Honor. And again, before we get to ratification, our argument is you don't even get there if you have a solvent company. On ratification, Your Honor, we did not have a situation where all of the directors were interested. To the contrary, only two of the directors were interested. And it was ratified by everybody else. This was a full board. You're just not answering my question. Excuse me, Your Honor. Okay, the question I'm asking, I understand the point about solid shares and conflict of interest. I'm asking what was ratified? In their briefing, they contend the record shows only that there was a ratification of the contribution agreement, which was the payment, and not a ratification of the decision to take on the debt through the loan. And I don't see in your briefing you respond to that point at all, so could you now? We did not respond to that point in particular, Your Honor. The record before the trial court, the bankruptcy court, showed that every one of the persons in question, every director approved of the transaction as of November 20, 2007, the date of the transaction, not just the date of the contribution agreement. The entire transaction? The entire transaction. And is that in corporate minutes? That is not in corporate minutes per se, Your Honor. That is each individual director got up on the stand, talked about synergies, talked about why he was supportive of the transaction, and ultimately said, yes, I was in favor of the transaction when all was said and done. That's testimony that they didn't ratify but approved of it. Your associate or fellow counsel has some advice. Thank you, Mr. Unram. There is at Appendix 394 a vote that we do call to the court's attention on this. And it's a vote on what? This was a vote on the November 20, 2007 transaction. And that's opposed to the contribution agreement. That's correct, Your Honor. The contribution agreement was August. This would have been closer in time to the transaction but approving the transaction. Does it say it's approving the contribution agreement or approving the transaction? What's the word? If you could bear with me one moment. There are votes on both the contribution agreement and the loan agreement at that point in time. Unless the court has anything else, I believe my time is up. Were you a corporate counsel back then? Excuse me? Were you a corporate counsel back then? I was not, Your Honor. Okay. Thank you very much, Your Honors. Thank you both. Have a safe trip back to Maine. Yes. Here's a minute. Oh, you still have your minute. Yes. I'll be hearing people. Hopefully not use the whole minute. Could you address this point about what the appendix says about that vote on 394? There is no vote that we are aware of, and we've scoured the record, where the board of directors ratified the entirety of the financing here and the highly levered nature of the transaction just didn't happen. Let me address the point you made about no duty to creditors. This is a strongman that they've constructed to knock down. We've never alleged a duty to creditors here. The liquidation trust, which is the plaintiff, owned the rights of the corporation and sued on behalf of the corporation, not the creditors. With respect, where that leaves us is I think where the district. I'm sorry, Mr. Keach. You started by saying that the creditors had assigned you all of the claims in the case. What is his precise argument? His precise argument is that in the fiduciary duty count, we were asserting rights of creditors and there was no duty to the creditors. We were not doing that. We had the rights and the trust of the corporation and also of the creditors. When we sued for fiduciary duty, we were suing on behalf of the corporation, not the creditors. Okay. And very quickly, I think we're where the district court thought we might be. The bankruptcy court did not make critical findings here on the solvency of the operating entities or of the reasonable equivalent value tended to those entities. It tried to bail the court out with a reference to synergies, which was really just a reference to belief in synergies that went to state of mind. There's no finding. There's also no finding on solvency, and the overwhelming evidence is that the opcos were insolvent. I think at a minimum, the court has to accept the district court's invitation to remand for additional findings. I think the court could actually enter judgment for the plaintiffs on this record, but failing that, I think at least a remand is appropriate. Thank you. Thank you. All rise.